IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEAH BILLINGSLEY, a minor, by and through her parents and natural guardians, KEVIN BILLINGSLEY and JENNIFER BILLINGSLEY,<br>                Plaintiff<br><br>              v.<br><br>FRANKLIN AREA SCHOOL DISTRICT, et al.,<br>              Defendants. | C.A. No. 11-160 Erie<br><br>Magistrate Judge Baxter |

# **OPINION AND ORDER**[1]

## **I.    INTRODUCTION**

### **A.    Relevant Procedural and Factual History**

On August 8, 2011, this civil action was commenced pursuant to 42 U.S.C. § 1983, by Plaintiff Leah Billingsley, a minor, by and through her parents and natural guardians Kevin Billingsley and Jennifer Billingsley. Named as Defendants are: Franklin Area School District ("Franklin"); Ronald A Paranick, Superintendent of Franklin ("Paranick"); George Forster, Jr., Principal of the Franklin Area High School ("Forster"); and Peter Wygant, a teacher at the Franklin Area High School ("Wygant"). For convenience, Defendants Paranick, Forster and Wygant will hereafter be referred to collectively as "individual Defendants."

The claims in this case arise from the sexual assault of Plaintiff by a fellow student at Franklin Area High School, which occurred on January 14, 2011. (ECF No. 1, Complaint, at ¶ 16). At the time, Plaintiff was in the ninth grade and her primary special education teacher was Defendant Wygant. (Id. at ¶ 9). On the date of the incident, Plaintiff was given a hall pass

---

[1] All parties have consented to the jurisdiction of a United States Magistrate Judge. [ECF Nos. 4, 5].

by Defendant Wygant, which allowed Plaintiff to leave her special education classroom without supervision. (Id. at ¶ 10). Shortly after Plaintiff left the classroom, Defendant Wygant gave a hall pass to another student, a male identified as "J.R." (Id. at ¶ 11). After leaving the classroom, J.R. found Plaintiff and "viciously assaulted and raped" her. (Id. at ¶ 16).

Plaintiff alleges that J.R. had sexually assaulted another female student at Franklin Area High School prior to January 14, 2011, and that the individual Defendants were all aware of the prior incident. (Id. at ¶ 12). Plaintiff alleges further that the individual Defendants were also aware that J.R. "had aggressive tendencies and had repeatedly made sexual advances to female students," which behavior "was flagrant, obvious, rampant and of a continuous duration." (Id. at ¶ 13).

Plaintiff claims that Defendants violated her due process right to bodily integrity under the fourteenth amendment to the United States Constitution. In particular, Plaintiff claims that the individual Defendants "created the danger that caused harm to [Plaintiff] and deprived her of her liberty interest in bodily integrity," and that the deprivation of her liberty interest was the result of the official policy, custom or practice of Defendant Franklin. As relief for her claims, Plaintiff seeks compensatory and punitive damages.

Defendants have filed a motion to dismiss [ECF No. 7] arguing that Plaintiff's claims against the individual Defendants are barred by the doctrine of qualified immunity and/or that Plaintiff has failed to state a cause of action upon which relief may be granted against any of the Defendants. Plaintiff has since filed a brief in opposition to Defendants' motion [ECF Nos. 10]. This matter is now ripe for consideration.

**B.**     **Standard of Review**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the

complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."  Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the *Twombly/Iqbal/Phillips* line of cases, as follows:
> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible.  This then

3

"allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."

* * *

[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

### C. Discussion

#### 1. Qualified Immunity

The individual Defendants assert that Plaintiff's claims against them are barred by the doctrine of qualified immunity and should be dismissed.

The doctrine of qualified immunity insulates government officials from liability for damages[2] insofar as their conduct does not violate clearly established rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, "qualified immunity shields government

---

[2] The defense of qualified immunity only applies to monetary damages and not to requests for injunctive relief. Burns, 2011 WL 1486075, at *12 ("Although qualified immunity bars Burns from seeking monetary compensation, he may still be entitled to injunctive relief. See Harris v. Pernsely, 755 F.2d 338, 343 (3d Cir. 1985)."). In this case, however, the only relief requested by Plaintiff is monetary damages.

4

officials from suit even if their actions were unconstitutional as long as those officials' actions 'did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Burns v. Pennsylvania Department of Corrections, 642 F.3d 163, 176 (3d Cir. 2011) quoting Harlow, 457 U.S. at 818. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." Burns, at 176 quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009).

The analytical framework that district courts have traditionally employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001). The Third Circuit summarized that framework as follows:

> The [Supreme] Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? Saucier, 121 S.Ct at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. See id. In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id.

Curley v. Klem, 278 F.3d 271, 277 (3d Cir. 2002). See also Doe v. Delie, 257, F.3d 309 (3d Cir. 2001).³ This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.

---

³

The rigid two-step inquiry set forth in Saucier was relaxed by the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009). See also Bumgarner v. Hart, 2009 WL 567227 (3d Cir. 2009). As the Supreme Court explained: "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case." Pearson, 555 U.S. at 240.

5

"Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 530 U.S. 730, 739 (2002). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. In order for an official "to have 'fair warning' [...] that his or her actions violate a person's rights, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Burns, at 176, quoting United States v. Lanier, 520 U.S. 259, 270 (1997) and Anderson v. Creighton, 483 U.S. 635, 640 (1987). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v. Ramirez, 540 U.S. 551, 56 (2004). The party asserting the defense of qualified immunity bears the burden of establishing it. See Harlow, 457 U.S. at 819.

In addressing the individual Defendants' qualified immunity argument, this Court will first consider whether Plaintiff has adequately alleged the deprivation of a constitutional right. If so, then the Court will determine whether that right was clearly established at the time the individual Defendants allegedly violated that right.

### a. Deprivation of a Constitutional Right

Plaintiff claims that Defendants violated her Fourteenth Amendment Due Process right to bodily integrity by allowing and/or failing to prevent her sexual assault by J.R., a fellow student.

In DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189 (1989), the Supreme Court held that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." Id. at 195. Thus, as a general rule, state actors are not under any obligation to protect private

citizens, such as Plaintiff, from the acts of private persons, like J.R. Nonetheless, there are two exceptions to this general rule. First, the state has a duty to protect or care for individuals when the state takes control of an individual so that a "special relationship" exists. See, e.g., Youngberg v. Romero, 457 U.S. 307 (1982) (state has duty to ensure safety of involuntarily-committed mental patients); Estelle v. Gamble, 429 U.S. 97 (1976) (state has duty to provide medical care to inmates). Second, the state has a duty to protect when it "acts in a way that makes a person substantially more vulnerable to injury from another source than he or she would have been in the absence of the state intervention." Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003).

In D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364 (3d Cir. 1992), the Third Circuit held that no special relationship exists between school children and the state. Thus, as both parties have recognized, the first exception does not apply in this case. Instead, Plaintiff's due process claim is based on the second exception, commonly known as the "state created danger" doctrine.

"The state-created danger doctrine is an exception to the rule that the Due Process Clause generally confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Soberal v. City of Jersey City, 334 Fed. Appx. 492, 494 (3d Cir. 2009)(internal quotation marks omitted). The exception applies only "when state authority is affirmatively employed in a manner that injures a citizen or renders him more vulnerable to injury from another source than he or she would have been in the absence of state intervention." Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006); see also Sanford v. Stiles, 456 F.3d 298, 304 (2006)(under the state-created danger doctrine, "liability may attach where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process").

7

To prevail on a state-created danger claim, a plaintiff must establish the following four elements:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright, 443 F.3d at 281 (quotations and footnotes omitted).

"A plaintiff's failure to satisfy any one of the four elements defeats his state-created danger claim." Malar v. Delaware County, 2009 WL 2493775, at *7 (E.D.Pa. Oct. 23, 2009). In this regard, the analysis of a state-created danger claim often centers on the fourth element because a state-created danger can exist only where the state has "affirmatively" used its authority to create or enhance the danger to the plaintiff. Bright, 443 F.3d at 282. As the Third Circuit Court explained:

> It is important to stress, for present purposes, that under the fourth element of a state-created danger claim, 'liability under the state-created danger theory is predicated upon the state's **affirmative acts** which work to the plaintiffs' detriments in terms of exposure to danger." D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364, 1374 (3d Cir. 1992)(*en banc*)(emphasis supplied); Brown v. Grabowski, 922 F.2d 1097, 1100-01 (3d Cir. 1990)(finding that DeShaney holds "that a state's failure to take affirmative action to protect a victim from the actions of a third party will not, in the absence of a custodial relationship ... support a civil rights claim"). It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause.

Id.

The Third Circuit has since clarified that the fourth element requires a plaintiff to "(1) show that a state official affirmatively acted to the plaintiff's detriment and (2) establish

direct causation between the affirmative act and the result." Soberal, 334 Fed. Appx. at 495.

Here, Plaintiff alleges that, despite their knowledge of J.R.'s sexually aggressive behavior and past assault of a female student, (i) Defendant Forster failed to supervise and monitor J.R.; failed to expel or properly discipline J.R. for his past conduct; failed to monitor the high school hallways while classes were in session; and failed to properly train the teachers under his supervision (ECF No. 1, Complaint, at ¶ 23); (ii) Defendant Paranick failed to implement a policy reasonably calculated to prevent the harassment, intimidation and sexual assault of female students; failed to provide training to teachers and principals, and failed to ensure that J.R. was monitored and/or supervised (Id. at ¶¶ 24, 27); and (iii) Defendant Wygant permitted J.R. to leave his classroom without supervision knowing that Plaintiff was in the halls without protection or warning. (Id. at ¶ 15).

The foregoing allegations against Defendants Forster and Paranick merely implicate such Defendants' failure to take various actions that may have prevented Plaintiff's assault from occurring. These allegations are insufficient to satisfy the fourth element of Plaintiff's state-created danger claim against said Defendants. See, e.g., Ye v. United States, 484 F.3d 634, 638 (3d Cir. 2007) ("both *DeShaney* and [Third Circuit] precedents explicitly require an affirmative act, rather than inaction"); Bright, 443 F.3d at 282 (it is **misuse** of state's authority rather than **failure to use** it that may violate due process); Brown v. School Dist. of Philadelphia, 2010 WL 2991741 at *8 (E.D.Pa. July 28, 2010) ("School District's failure to discipline, transfer or expel student violators is not a state created danger"). Because Plaintiff has failed to set forth sufficient allegations against Defendants Forster and Paranick to establish that they deprived her of a constitutional right, said Defendants are entitled to qualified immunity and the claims against them will be dismissed.

Conversely, Plaintiff's claim against Defendant Wygant is not so easily dismissed, because Plaintiff has alleged that Defendant Wygant took an affirmative act that directly

9

resulted in her sexual assault; specifically, he permitted J.R. to leave his classroom without supervision knowing that Plaintiff was in the halls without protection or warning. This allegation is sufficient to satisfy the fourth element of Plaintiff's state-created danger claim against Defendant Wygant. The Court must, therefore, determine whether the remaining elements of a state-created danger claim have been adequately alleged against Defendant Wygant.

In this regard, Plaintiff has alleged that, at the time Defendant Wygant issued a hall pass to J.R., not only did he know that Plaintiff was already in the halls unprotected, he also knew of J.R.'s "sexually aggressive behavior and past assault of a female student." Thus, it is reasonable to infer that the resultant sexual assault of Plaintiff by J.R. was both foreseeable and fairly direct, and that Plaintiff was a foreseeable victim, such that the first and third elements of a state-created danger claim have been satisfactorily alleged.

This leaves the second element, which is fitting "[b]ecause the culpability requirement is often the most difficult element for a plaintiff to prove," and "the outcome of a state-created danger case will often turn on this prong." Sanford, 456 F.3d at 305 (citations omitted). The second element requires Plaintiffs to show that "a state actor acted with a degree of culpability that shocks the conscience." Id. at 304. "The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." Id. at 309. "In a 'hyperpressurized environment," an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient." Id. The latter standard would appear to be applicable here, as Defendant Wygant's decision to issue a hall pass to J.R. shortly after having already issued a hall pass to Plaintiff was one that involved deliberation and unhurried judgment. Thus, under a deliberate indifference standard, a fact finder could find that Defendant Wygant's action was conscience-shocking and thereby satisfied the second element of a state-

created danger claim.

Based on the foregoing, Plaintiffs' allegations meet all of the threshold requirements for stating a state-created danger claim against Defendant Wygant. Thus, the Court is left to determine whether the rights Plaintiff claims to have been violated by Defendant Wygant were clearly established at the time of his alleged act.

### b. Clearly Established Rights

The case law establishing a liberty interest in a person's bodily integrity under the substantive due process clause of the Fourteenth Amendment has existed for more than twenty years. See, e.g., Stoneking v. Bradford Area School District, 882 F.2d 720, 726-27 (3d Cir. 1989)("the constitutional right ... to freedom from invasion of her personal security through sexual abuse, was well-established at the time the assaults upon her occurred"). Moreover, the state-created danger theory cited by Plaintiff has been firmly established in this Circuit since July 1999. See Estate of Smith v. Marasco, 318 F.3d 497, 510-11 (3d Cir. 2003) (holding that state-created danger theory was clearly established in July 1999). Based on the foregoing, the Court finds that the contours of Plaintiff's constitutional rights were sufficiently clear that "a reasonable official would understand that his [alleged] conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. Accordingly, the individual Defendants' motion to dismiss Plaintiff's claim against Defendant Wygant on the basis of qualified immunity will be denied, and such claim will be allowed to proceed beyond the pleading stage.

### 2. Municipal Liability Claim v. Defendant Franklin

Plaintiff alleges that "[b]y virtue of Defendant Paranick's position as a policy maker for [Defendant Franklin], the deprivation of [Plaintiff's] liberty interest was the result of the official policy, custom or practice of [Defendant Franklin]." (ECF No. 1, Complaint, at ¶ 27).

Municipal liability under §1983 requires the plaintiff to prove the existence of a policy or custom that resulted in a constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978); City of St. Louis v. Prapotnik, 485 U.S. 112 (1988); A.M. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 580 (3d Cir. 2004). In Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575 (3d Cir. 2003), the Third Circuit identified three methods of establishing a policy, practice or custom:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Id. at 584 (internal citations and quotations omitted).

Here, Plaintiff argues that Defendant Franklin can be held liable under the third theory – failure to act affirmatively – which the Natale court described as "turn[ing] a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights." Id. In particular, Plaintiff has alleged that Defendant Paranick, as the alleged policymaker for Defendant Franklin, "failed to implement any policies reasonably calculated to prevent the harassment, intimidation and sexual assault of female students, failed to provide training to teachers and principals within the Defendant District that was reasonably calculated to prevent the harassment, intimidation and sexual assault of female students, and failed to ensure that JR was monitored and/or supervised." (ECF No. 1, Complaint, at ¶ 24). Plaintiff argues that this failure to implement appropriate policies and to provide adequate training occurred even though "the need for affirmative action was clear, particularly as the student who had already sexually assaulted one classmate was permitted to remain at school." (ECF No. 10, Plaintiff's Brief, at p.

12

22).

In City of Canton v. Harris, 489 U.S. 378 (1989), the Supreme Court addressed the question of whether inadequate training can justifiably be said to represent municipal "policy," as follows:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the [municipality] is responsible, and for which the [municipality] may be held liable if it actually causes injury.

Id. at 389-90.

Here, if proven, the facts described in the complaint could reasonably lead to the conclusion that Defendant Franklin's failure to take affirmative action to protect the female student body at Franklin Area High School from falling victim to J.R.'s sexually aggressive tendencies represented a policy born of deliberate indifference. Thus, Plaintiff has sufficiently alleged a basis upon which Defendant Franklin may be held responsible for the injuries she allegedly suffered as a result of its policies and/or customs. Accordingly, Defendant Franklin's motion to dismiss Plaintiff's claim against it will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEAH BILLINGSLEY, a minor, by and through her parents and natural guardians, KEVIN BILLINGSLEY and JENNIFER BILLINGSLEY,<br>    Plaintiff<br><br>v.<br><br>FRANKLIN AREA SCHOOL DISTRICT, et al.,<br>    Defendants. | C.A. No. 11-160 Erie<br><br>Magistrate Judge Baxter |

## ORDER

AND NOW, this 27th day of January, 2012,

IT IS HEREBY ORDERED that Defendants' motion to dismiss complaint [ECF No. 7] is granted in part and denied in part, as follows:

1. Defendants' motion is GRANTED as to Plaintiff's claims against Defendants Forster and Paranick, and the Clerk is directed to terminate said Defendants from this case; and

2. Defendants' motion is DENIED as to Plaintiff's claims against Defendants Wygant and Franklin, and such claims shall be allowed to proceed beyond the pleading stage.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge